IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYMAN WADDILL, | CASE NO. CV-F-08-614-LJO DLB |
| Plaintiff, | **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| AT&T UMBRELLA BENEFIT PLAN NO. 1, | |
| Defendant. | |

The parties have filed cross motions for summary judgment pursuant to Fed.R.Civ. P 56. Defendant AT&T Umbrellas Benefit Plan No. 1 (defendant or "Plan") seeks summary judgment in this Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq*. ("ERISA"), action arising from denial of plaintiff Lyman Waddill's ("plaintiff") claim for short-term disability benefits. Plaintiff also seeks summary judgment that he is entitled to benefits on his disability claim.

**FACTUAL OVERVIEW**

Plaintiff was a Customer Service Representative for Cingular Wireless in March 2005 when he applied for and began receiving short term disability ("STD") benefits under the Plan. The Claims Administrator, Broadspire Services Inc. ("Broadspire"), approved plaintiff for STD benefits through May 24, 2005. Plaintiff requested an extension of the benefits beyond May 24, 2005, but Broadspire denied the request on June 7, 2005. Plaintiff filed an administrative appeal which upheld the denial of benefits. Plaintiff filed this lawsuit on May 2, 2006.

1

## ANALYSIS AND DISCUSSION

**A. ERISA Standard of Review**

Under ERISA, a civil action may be brought by a plan participant, beneficiary or fiduciary. 29 U.S.C. § 1132(a). Under 29 U.S.C. § 1132(a)(1)(B), a plaintiff may seek to "recover benefits due him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

### 1. Two Potential Standards of Review

The standard by which a court reviews benefit decisions "depends on the amount of discretion that the plan vests in its administrator." *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1324 (9th Cir. 1992), *cert. denied,* 507 U.S. 1031 (1993). In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), the United States Supreme Court held that when an ERISA plan vests the plan administrator or fiduciary with discretionary authority to determine benefit eligibility, the district court ordinarily reviews the decision to grant or deny benefits for an abuse of discretion. In *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir.), *cert. denied,* 528 U.S. 964 (1999), the Ninth Circuit Court of Appeals, in its majority opinion, clarified its interpretation of *Firestone*:

> "[D]enial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. That means the default is that the administrator has to show that the plan gives it discretionary authority in order to get any judicial deference to its decision."

Thus, two possible standards of review exist: abuse of discretion and *de novo*. When a plan does not confer discretion on the administrator "to determine eligibility for benefits or to construe the terms of the plan," a court must review the denial of benefits *de novo*. *Abatie v. Alta Health & Life Ins. Co.*, 421 F.3d 1053 (9th Cir. 2005), *reh'g en banc granted*, 437 F.3d 860 (9th Cir. 2006) *and on reh'g en banc*, 458 F.3d 955 (9th Cir. 2006).

Therefore, this Court first must determine whether to apply a *de novo* or the abuse of discretion standard of review of the denial plaintiff's benefits. Based on the applicable standard of review, this Court is then called upon to determine whether the motions may be granted. *Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection*, 349 F.3d 1098, 1105 (9th Cir. 2003) ("When

an unauthorized body that does not have fiduciary discretion to determine benefits eligibility renders such a decision ... deferential review is not warranted."), *cert. denied,* 545 U.S. 1139 (2005).

### 2. The Parties' Arguments as to the Standard of Review

Plaintiff contends *de novo* review is the proper standard. Plaintiff argues that *de novo* standard should apply because no plan documents properly delegated authority to Broadspire to decide his disability benefits, citing *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1285 (9th Cir.1990), *cert. denied,* 498 U.S. 1087 (1991). Plaintiff contends that there was an improper delegation of authority and any discretion exercised by Broadspire is reviewed *de novo*.

Defendant argues that the "abuse of discretion" standard applies. Defendant argues that the Plan unambiguously confers discretion to the Claims Administrator to determine the eligibility for benefits and to construe the terms of the Plan. (Plan §6.5.) Defendant argues the Plan specifically provides that the Administrative Committee may delegate administrative responsibilities to Claims Administrators, and that upon delegation, "such third party (and the determinations of such third party) shall be entitled to the full discretion and authority afforded the Administrative Committee in Section 6.7."

### 3. The Applicable Standard of Review

Under ERISA, a named fiduciary may delegate its fiduciary responsibilities:

> The instrument under which a plan is maintained may expressly provide for procedures ... (B) for *named fiduciaries to designate persons* other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan. 29 U.S.C. § 1105(c)(1) (emphasis added).

Where a plan gives the administrator such discretionary authority, courts review a claim denial under an abuse of discretion standard. In *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1285 (9th Cir.1990), the plan document named the employer as the Plan administrator and granted the employer discretionary authority to determine eligibility. The Plan also permitted the delegation of discretionary authority to another person. *Madden*, 914 F.2d at 1279 ("The LTD Administration Committee may delegate its authority with respect to the denial, granting, and administration of claims to a claim administrator.") In *Madden,* the Ninth Circuit upheld the trial court's application of the arbitrary and capricious [abuse of discretion] standard of review to the insurer's benefits determination.

> "Because the Plan gives the LTD Administration Committee discretionary authority and the Committee has properly designated Metropolitan as ERISA fiduciary, we review Metropolitan's decision to terminate Madden's Plan benefits under the more deferential 'arbitrary and capricious' standard." *Madden*, 914 F.2d at 1285.

Arbitrary and capricious review is tantamount to "abuse of discretion" review. *See Jebian*, 349 F.3d at 1103. In *Madden,* there was a proper designation of another party as fiduciary. Thus, where a plan expressly gives an administrator or fiduciary the discretionary authority and the named fiduciary properly delegates its discretionary authority to another fiduciary, the Court's review is by abuse of discretion.

### a. The Plan Gave Discretionary Authority to Delegate Administration

Here, the Plan provides that an "Administrative Committee" shall be the Plan Administrator as that term is defined in ERISA section 3(16)(A). ( Plan §1.1, Administrative Record "AR" 23.)  The Administrative Committee "shall act on behalf of the controlling company to administer the Plan as provided in Article VI" of the Plan documents. ( Plan §1.1, AR 23.)  The Plan further provides that the Administrative Committee shall have complete control of the administration of the Plan.

The Plan gives the Administrative Committee broad authority to delegate its authority.  The Plan language adequately confers discretion on the Administrative Committee as a named fiduciary with "sole and absolute discretion to make all determinations under the plan" and "to make any and all determinations and findings with the respect to the benefits payable." (Plan §6.7, AR 37.) The Plan also gives the Administrative Committee "the power to delegate specific fiduciary, administrative and ministerial responsibilities;" that the delegations may be to "officers or employees . . . insurers, Claims Administers or to other persons . . .;" and further "to delegate any record keeping, administrative or fiduciary duties hereunder to any other person or third-party." (AR 34-35; Plan §6.5 and §6.3(m).)

Thus, it is undisputed that the Administrative Committee had the power under the Plan to delegate functions to third parties.

### b. Delegation to BroadSpire for the Claims Administration

The Plan also specifically authorizes delegation of the claims administration function. The Plan states that the "Administrative Committee has delegated authority for claims determination and claims review on appeal to the Claims Administrator." (Summary Plan Documents, AR 16.)  There is no question that the Plan permitted the delegation of the claims administration responsibility to a third

party.

As defined by the Plan, the term "Claims Administrator" means:

> "[T]he person or entity providing administrative services to the Company, to the extent delegated, in connection with the operation of the Plan and the payment of claims." (AR 23.)

Here, Broadspire performed as the Claims Administrator for the relevant time. The Plan, however, specifically designates MetLife as the Claims Administrator. (AR 16.)

> "The Disability Plan is administered by the Administrative Committee of the Company. You should consult the Other Important Information Section for more information regarding the Administrative Committee's authority to administer the plan. The Administrative Committee has delegated authority for claims determination and claims review on appeal to the *Claims Administrator, MetLife*." (Summary Plan Documents, AR 15 (emphasis added) and see also AR 14 ("Disability Claims Administrator: MetLife.").)

The Plan does not designate Broadspire as the Claims Administrator. No document submitted to the Court delegates discretionary Plan functions to Broadspire. Yet, Broadspire acted as the Claims Administrator during the period of action.[1]

The issue, here, is whether the Plan Administrative Committee properly designated Broadspire as the Claims Administrator. This Court must consider whether there was a sufficient delegation under the Plan to Broadspire such that the delegation would invoke the "abuse of discretion" standard of review. If Broadspire was not properly delegated the authority to conduct the claim review, its decision is not subject to the deferential standard of review of abuse of discretion.

Defendant submits testimony that Broadspire "was selected" as the Claims Administrator. Defendant submitted two declarations of Nancy Watts, a Senior Benefits Analyst. (Doc. 16, 27.) Ms. Watts states "Broadspire Services Inc. ('Broadspire') was selected as the third party Claims

---

[1] In the initial letter to plaintiff accepting the filing of his claim, Broadspire stated its role as follows, "Broadspire Services, Inc. ("Broadspire") is the claims paying administrator for the Cingular Wireless Short-Term Disability (STD) benefits. Your claim for disability benefits begining 03/21/2005 has been reviewed. We have approved your claim for STD benefits." (March 18, 2005 letter, AR 129.) In a second letter to plaintiff, in denying his claim, Broadspire stated its role as follows, ""Broadspire Services, Inc. ("Broadspire") is the third party disability claims administrator for the Cingular Wireless Short-Term Disability (STD) benefits. We have completed our review of your claim for STD benefits and have determined that no benefits are payable to you for this claim beyond 05/24/2005." (June 7, 2005 letter, AR 198.) In both letters, Broadspire noted its discretionary function of reviewing and approving or denying claims. While the March 18, 2005 letter notes the Broadspire acted as the "claims paying administrator," Broadspire functioned with discretionary authority to review and approve claims under the Plan. Thus, Broadspire functioned with discretionary authority to review, approve or deny submitted claims.

5

1  Administrator for the Disability Plan ('Claims Administrator') from January 1, 2005, and acted as the
2  Claims Administrator during the relevant time period in this action." (Doc. 27, Watts Decl. ¶6.) No
3  evidence is submitted to show how or who "selected" Broadspire as Claims Administrator. No
4  documents are submitted in support of Broadspire's appointment as the Claims Administrator by the
5  Administrative Committee.

6        Defendant argues that because Broadspire was selected as the Claims Administrator for the Plan,
7  it was entitled to full discretion and authority. (Doc. 25, Opposition p. 13.) Defendant argues the "fact
8  that the [Summary Plan Documents] documents incorporated in the [Administrative Record] did not
9  name Broadspire as the Claims Administrator is immaterial." (Doc. 25, Opposition p.13.) Defendant
10 argues that the Plan permitted delegation of authority, as was delegated to Broadspire, and plaintiff dealt
11 with Broadspire throughout his disability. (Doc. 25, Opposition p.13.)

12       Plaintiff argues that there must be documents evidencing the delegation, and defendant cannot
13 "simply switch plan administrators - off-stage and in some limbo-land." (Doc. 33, Plaintiff's Reply p.3.)

14       **c.    No Proper Delegation of Discretion**

15       Plan fiduciaries must properly delegate their authority under the Plan to invoke the "abuse of
16 discretion" standard of review. *See Madden*, 914 F.2d at 1285 ("Because the Plan gives the LTD
17 Administration Committee discretionary authority **and the Committee has properly designated**
18 **Metropolitan as ERISA fiduciary**, we review Metropolitan's decision to terminate Madden's Plan
19 benefits under the more deferential 'arbitrary and capricious' standard." (Emphasis added)).[2]

20       In *Shane v. Albertson's Inc.*, 504 F.3d 1166, 1171-72 (9th Cir. 2007), the Court held the absence
21 of documentation of the delegation is not the sole criterion for determining proper delegation of fiduciary
22 responsibilities. In *Shane*, the plan conferred discretion on the trustees and authorized the trustees to
23 delegate discretionary authority to the contract administrator or employees of the plan sponsor. The
24 trustees had delegated discretionary authority to an employee who in turn delegated his authority to the
25 medical review committee (MRC), which was comprised of other employees. The District Court
26 rejected that the MRC was properly vested with the discretionary authority because no documentation

---

28    [2] See 29 U.S.C. § 1002(21)(A) (defining a "fiduciary" as an entity with "any discretionary authority" in the "administration of" an ERISA plan).

6

showed the delegation to the MRC. *Id.* at 1170-71. On appeal, the Ninth Circuit affirmed the district court's decision that *de novo* review applied, but held that the District Court should review not only documentation but also the surrounding evidence to determine if a proper delegation occurred. "The district court was required to apply the 1993 Disability Plan's delegation clause as well as evaluate the evidence surrounding the transfer of discretionary authority from the Trustees to the MRC, such as the testimony from Mr. Hodge, the director of Health and Welfare Programs at Albertson's, describing the delegation to the MRC." *Id.* At 1171. The Court held that in such circumstances, the District Court must focus "on whether the Plan contemplated the possibility of a transfer of discretionary authority to a third-party and whether there was evidence establishing delegation" to the third party. *Id.* at 1171. In *Shane*, the *de novo* standard of review was employed because "there was nothing in the Disabilities Plan's delegation clause or in the Disability Plan itself the contemplated further delegation from an employee . . . to any other body of employees . . ." *Shane*, 504 F.3d at 1172. The Plan did not contemplate the further delegation of discretionary authority to the MRC and, thus, the benefit determinations of the MRC were not entitled to any deference. *Id.*

Here, the Plan contemplated delegation of discretionary authority to MetLife. MetLife is expressly named as the Claims Administrator, and it follows that the Administrative Committee expressly delegated its discretionary authority to MetLife. While defendant argues it is immaterial that MetLife is named, the Court cannot ignore the Summary Plan Documents which specifically designate "MetLife," not Broadspire, as the Claims Administrator. There is no evidence that the Administrative Committee retracted its delegation to MetLife and redirected it to Broadspire. Broadspire is not named in any documents and there is no evidence that the Administrative Committee delegated its authority to Broadspire. Ms. Watts states that Broadspire was "selected" as the Claims Administrator. She, however, does not state that the Administrative Committee delegated its authority to Broadspire. Defendant does not argue that the Administrative Committee delegated its authority to Broadspire.

A further grant of discretionary authority from MetLife to Broadspire is not supported by the Plan documents. The Plan, here, contemplates that the Administrative Committee may delegate its authority to "any other person or third party." (Doc. Plan §6.1(m), AR 35; Plan §6.5, AR 36 ("The delegation may be to officers or employees of a Participating Company, insurers, Claims Administrator, or to other

7

persons, all of whom shall serve at the pleasure of the Administrative Committee. . . .").) The Plan does not contemplate <u>a further delegation</u> of that authority from MetLife to Broadspire, if that is what occurred. *See Shane*, 504 F.3d at 1172 ("There is nothing in the Disability Plan's delegation clause or in the Disability Plan itself that contemplates further delegation . . ."); *Deloach v. San Diego Gas & Elec. Co.*, 2008 WL 4426010, 8 (S.D.Cal. 2008) (Plan documents substantiated further delegating authority to a subcommittee for handling claims decisions); *Nelson v. EG & G Energy Measurements Group Inc.*, 37 F.3d 1384, 1388 (9th Cir.1994) (*de novo* review proper where an administrative committee had discretion to make decisions concerning eligibility and benefits, but an employee, who had no express delegation of authority to make decisions, made the decision.)

Moreover, there is no argument that Broadspire was acting merely as a claims processor. A grant of discretion in the Plan document may extend to the fiduciary's employment of an agent to perform actual claims processing. *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279 (9th Cir.1990). Indeed, the evidence shows Broadspire was acting with discretionary authority. Broadspire was not merely a claims processor because Broadspire employed discretionary authority to grant or deny benefits.

Accordingly, while the Plan grants the Administrative Committee discretionary authority to delegate responsibilities, no evidence has been presented that the authority was properly delegated to Broadspire. Therefore, the proper standard of review is *de novo* review.

**B.     Merits of the Cross-Motions for Summary Judgment**

The cross-motions call upon the Court to consider whether the Broadspire properly denied plaintiff's appeal of the Broadspire determination to deny STD benefits.

Plaintiff challenges the manner in which Broadspire interpreted the medical evidence. Plaintiff argues that Broadspire wrongly evaluated the evidence since the initial grant of short term disability was based on the same evidence. (Doc. 20, Plaintiff's Moving Papers p.5:3-13.) Plaintiff argues that Broadspire failed to investigate the claim and credit plaintiff's evidence, and merely "cherry picked" evidence to deny his claim. (Doc. 20, Plaintiff's Moving Papers p.5.) Defendant argues that there is substantial evidence in the Administrative Record to support the determination that plaintiff did not have a disabling condition to continued STD benefits. (Doc. 14, Defendant moving papers p. 16.) Defendant argues that plaintiff was not entitled to benefits because he failed to present objective medical evidence

of a disability.

### 1. The Court's Review Under the *De Novo* Standard

In a *de novo* review, the Court undertakes an independent and thorough inspection of the administrator's decision without affording any deference at all to the plan administrator's decision. *Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 728 (9th Cir. 2006). Under the *de novo* standard, "in considering motions for summary judgment, the district court must decide whether there are genuine issues of material fact, not whether there was substantial or ample evidence to support the plan administrator's decision." *Mongeluzo v. Baxter Travenol Disability Benefit Plan*, 46 F.3d 938, 942 (9th Cir. 1995). The Court will ask whether plaintiff is disabled within the terms of the policy, and after evaluating the persuasiveness of conflicting evidence, decide which is more likely to be true. *Kearney,* 175 F.3d at 1095. Where the district court reviews *de novo* the denial of a claim for benefits, a motion for summary judgment may be granted only where there is no genuine issue of fact as to whether the claimant is disabled under the meaning of the subject policy. *See Kearney,* 175 F.3d at 1093.

### 2. The Evidence as to Whether Plaintiff was Disabled

Here, the Plan states that to "qualify for benefits under the STD Plan, you must be absent from work and unable to perform the duties of your customary job due to illness or injury for more than five consecutive workdays." (Summary Plan Documents AR 3.) The Plan defines disability as follows:

> "Total Disability" means, with regard to Short Term Disability benefits, that due to illness or injury, an employee is unable to perform his or her customary job or another available job assigned by the Company with the same full- or part- time classification for which the employee is reasonably qualified.

(Summary Plan Documents at 3; AR 4.)

> "Partial Disability" means, with regard to Short Term Disability, that an employee is unable to perform his or her customary job, or another available job assigned by the Company with the same full- or part- time classification for which that employee is reasonably qualified, for the same number of hours that that employee was regularly scheduled to work before the disability.

(Summary Plan Documents at 3; AR 4.)

Plaintiff was initially granted STD disability based for an umbilical hernia. (Doc. AR 53.) Plaintiff reported a claim based upon the anticipated hernia surgery. (AR 53.) At that time, plaintiff also reported other medical conditions of HIV and peripheral neuropathy. (AR 53.) Plaintiff was granted

9

STD benefits through April 17, 2005. (AR 129, 141.) On April 19, 2005, plaintiff sent a doctor's note signed by treating physician Dr. Rutledge, stating that plaintiff "may return to full activity as of April 26, 2005." (AR 145-46.) Broadspire extended plaintiff's disability benefits through April 25, 2005. (AR 153.)

On or about April 26, 2006, plaintiff telephoned Broadspire and notified the processing agent, Ms. Brown, that he had seen an HIV Specialist, Simon Paul, M.D., at University Medical Center in Fresno, California, and that he was requesting an extension of STD benefits due to his new condition of "peripheral neuropathy and other conditions." (AR 79.) Plaintiff submitted Dr. Paul's chart for an April 25, 2005 visit in which Dr. Paul noted subjective complaints of severe pain in upper legs and calves, numbness in his feet and problems with concentration. (AR 154.) The chart contained objective findings of decreased sensation from feet to the mid calf, decreased vibratory sensation in the toes, and hypersensitivity of the thighs. (AR 155.) Dr. Paul's assessment was "HIV, worsening neuropathy." In a separate Physician Statement, Dr. Paul also noted plaintiff's other condition as "depression" and indicated that he did not expect to see "clinical improvement until March 14, 2006." (AR 155, 164.) In a follow up visit with Dr. Paul on May 3, 2005, Dr. Paul reported objective findings of:

> "NEURO/MSE: a Ox3 (c/o difficulty w complex tasks/memory ie programming), sens FT decreased feet, finger tips bilat
> SKIN: vib sense decreased bilat feet, position sens intact. Gait uses cane. w/o cane has slow hesitant gait using arms for balance, minimally wide based
> STUDIES: strength 4/5 grip, finger pinch, 4/5 quad, hamstr, foot dorsi/plantar flexion" (AR167.)

On May 24, 2005, plaintiff visited Dr. Paul's office to review laboratory tests. (AR 175.) The tests showed "his viral load increased to 22,000 and his cd4 increased to 371, and a 17% sed rate is elevated to 39%." (AR 175.) The nurse practitioner in Dr. Paul's officer noted, " I explained to him that this is an indication of inflammation of the joints, and bones. [T]his may be an indication of the amount of pain he is in." Plaintiff reported that "it takes him approx 1-1 ½ hrs to get ready in the [a.m.], sitting for any lengthy of time is the worse, esp. in the car, he likes being outside, working in the yard, exercising the dog." (AR 175.) Objective findings included "difficult to lift arms above head, hands stiff, pt sits, gets up stiffly, walks stiffly." (AR 175.) "Pt was encouraged to stay active." Plaintiff acknowledges that Broadspire received all of the medical reports from Dr. Paul.

On June 7, 2005, Broadspire issued a denial of STD benefits beyond May 24, 2005. The denial letter explained that the medical information submitted by plaintiff's treating physician did not support his inability to perform the core elements of his job as a Customer Service Representative. (AR 198.) The denial letter noted that, "Dr. Paul states you have been doing yard work and exercising the dog." (AR 198.) The letter stated that Dr. Paul had failed to submit documentation of "functional loss, complications associated with diabetic, amyloid, and hereditary sensory neuropathies, resulting in heightening of the arch of the foot, backward and lateral curvage of the spine, loss of hair or ulceration in the affected area, loss of bone density, pathologic fractures, or joint disease." (AR 198.) Broadspire based its decision upon the conclusions of its in-house medical personnel that plaintiff did not have sufficient documentation to establish disability under the Plan. (AR 187, "I have received medical documentation from your last office visit dated 05/24/05 and our nurse, Naomi, has reviewed the information. Your claim is being submitted to my supervisors for final determination denial.")

### 3. The Administrative Record

The Administrative Record includes the following documents: the Summary Plan Documents (AR 1-20); the Benefits Plan (AR 21-48); Intake information (AR 49-59); Notice of STD benefits (AR 129-130); Medical Release (AR 133-37); health care provider certification of surgery for umbilical hernia (AR 141); plaintiff's communications with Broadspire as to his release for work following his surgery (AR 143-144); doctor's release of plaintiff to return to work as of April 26, 2005 (AR 145-146); notice by Broadspire regarding extension of plaintiff's STD benefits (AR 153); medical records and correspondence from plaintiff's treating physician, Simon Paul, M.D. (AR 154-168); medical records from treating health care provider Judy Miyakawa, FNP (AR 185), plaintiff's correspondence with case worker in anticipation of denial (AR 192-195); June 7, 2005 denial of STD benefits (AR 198-200); plaintiff's notice of appeal of the denial of STD benefits (AR 203-229); appeal correspondence (AR 237-244); Physician peer review reports for appeal process (AR 246-255); and appeal summary including a job description (AR 256-262.)

In general, a district court may consider only evidence within the administrative record at the time of the administrator's decision. *See Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1472 (9th Cir.1993). This restriction is based on the principle that federal district courts should not function "as

substitute plan administrators," and that expanding the record on appeal "would frustrate the goal of prompt resolution of claims by the fiduciary under the ERISA scheme." *Id*. Yet, there is an exception to this general exclusionary rule where a federal court reviews an administrator's decision *de novo*. *See Mongeluzo v. Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943-44 (9th Cir.1995). The Ninth Circuit "permits the district court in its discretion to allow evidence that was not before the plan administrator," and that "[t]he district court should exercise its discretion ... only when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision." *Id.* at 944; *See also Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 944 & n. 2 (9th Cir.1999) (additional evidence inadmissible where the evidence was not before the plan administrator at the time of denial).

Here, while the parties do not ask that additional documentation be admitted, plaintiff argues that the Administrative Record was not timely submitted. Plaintiff argues that he did not have an adequate opportunity to examine or expand the Record before having to comply with the summary judgment motion filing requirements, pursuant to the Scheduling Order. The Scheduling Order did not state a date for filing the Administrative Record and defendants submitted the Record along with defendant's motion for summary judgment on May 15, 2009.[3] Plaintiff filed his motion also on May 15, 2009. (Doc. 20.)

The Court cannot rule on the motion without providing an adequate opportunity for plaintiff to review the Record. ERISA's purpose is "to protect ... the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. 1001(b). Recently, the Supreme Court explained in *Metropolitan Life Ins., Co. v. Glenn*, – U.S. –, 128 S.Ct. 2343, 2350 (2008) the protective nature of ERISA:

> ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary

---

[3] The Administrative Record has yet to be filed into the Court's record by the Defendant. Defendant provided the Court with a courtesy copy.

> claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B).

The protections of ERISA would not be fostered should this Court rule on the evidence presented in the Administrative Record without affording plaintiff an adequate opportunity to review and consider the evidence. For this reason alone, the motions for summary judgment should be denied.

**4.    Questions of Fact as to the Review of the Medical Evidence**

There is a question of fact as to whether Broadspire considered the progressive and degenerative nature of plaintiff's HIV and neuropathy disease, and whether it overlooked the recommendations of plaintiff's treating physician, who had advised plaintiff in recent visits against working. (See AR 164 (Physician note).) Broadspire found plaintiff was not disabled because he had been able to complete an exercise routine of some gardening and walking his dog, while ignoring statements establishing that he was still having trouble walking distances and sometimes could not sit

There is a question of fact that Broadspire discounted reliable medical evidence that plaintiff was in fact unable to perform his job. While a defendant need not accord special weight to the opinions of a plaintiff's treating doctors, it may not "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). Here, no reviewing physician reviewed the medical evidence before the initial denial in June 2005. Rather, a nurse practitioner ruled the evidence was insufficient.

Following the denial and plaintiff's appeal, the determination was reviewed by three reviewing physicians. On plaintiff's appeal, Broadspire's reviewing doctors did not explain why they rejected the opinions of the physician who examined plaintiff. For example, the doctors hired by Broadspire to review plaintiff's case did not explain why they did not credit Dr. Paul's opinion. There is a question of fact whether the defendant failed to provide sufficient justification for discrediting both plaintiff's self-reported pain and the opinions of his treating doctor. In some contexts, the Ninth Circuit disapproves of defendant's approach of disregarding subjective evidence of pain, especially where

objective evidence is not available. *See Saffon*, 522 F.3d at 872-73; *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir.1989) (stating that "despite our inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working. Because pain is a subjective phenomenon, moreover, it is possible to suffer disabling pain even where the degree of pain, as opposed to the mere existence of pain, is unsupported by objective medical findings.").

In this case, Broadspire denied plaintiff's claim because it concluded that plaintiff could do sedentary work. The Court notes that Broadspire discounted plaintiff's complaints of pain because they were self-reported and did not have an objective basis. (AR 199 "the medical information submitted by Dr. Paul did not support the inability of you to perform the essential functions of your job.") While reviewing doctors apparently dismissed plaintiff's pain as "self reported," they did not attempt to reconcile their view with that of Dr. Paul's, who apparently found plaintiff's self reporting of pain to be credible. *See Jebian*, 349 F.3d at 1109 n. 8 (stating a court may recognize "that a given treating physician has 'a greater opportunity to know and observe the patient' than a physician retained by the plan administrator.") *See also Kearney*, 175 F.3d at 1095 (stating a court "can evaluate the persuasiveness of conflicting testimony and decide which is more likely true.")[4] Accordingly, a question of fact exists as to whether Broadspire considered the progressive and degenerative nature of plaintiff's HIV and neuropathy disease, and whether it overlooked the recommendations of plaintiff's treating physician.

Further, an issue of fact exists as to whether the medical evidence was considered as to plaintiff's functional capacity to perform the mental duties of a Customer Service Representative. The reviewing doctors considered the sedentary nature of plaintiff's Customer Service Representative position. (AR

---

[4] ERISA does not "impose a heightened burden of explanation on administrators when they reject a treating physician's opinion," nor does it require that plan decisionmakers "accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). Unlike social security cases, the plan administrators in the ERISA context are not required to "accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003). A decision by the SSA to award a claimant Social Security benefits is not binding on a plan administrator. *See, e.g., Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1285 (9th Cir.1990) (affirming plan administrator's decision denying disability benefits, even though claimant received SSA benefits, because claim file contained evidence in support of plan administrator's decision). Nonetheless, the Court here is reviewing the Record on a *de novo* standard which permits the Court to weigh evidence.

247, "The claimant's position is that of a customer service representative which is sedentary. There is no evidence of significant loss of range of motion or strength that is quantified or a severe loss of function that is quantified.")

It is disputed whether the proper mental requirements of the job were considered in light of plaintiff's complaints of pain and increased neuropathy. Reviewing physician Elana Mendelssohn, PsyD, reported that because there was an absence of examination findings supporting cognitive, emotional or behavioral impairment, there was no functional impairment. Again, the reviewing physician did not consider the subjective complaints coupled with the reports of Dr. Paul to support a functional inability to perform the mental demands of his particular job. Plaintiff's view of the mental demands of the Customer Service Representative is more extensive than the job description for the position. (See AR 203 (listing of functions) and AR 257 (job description).)

On the other hand, plaintiff's motion is denied because there are issues of fact if he is disabled. There are questions of fact as to whether plaintiff's evidence showed he was disabled from performing his position as a Customer Service Representative. Three independent medical specialists examined plaintiff's medical evidence, including a specialist in internal medicine (Dr. Russell Superfine), a specialist in clinical and neuropsychology (Dr. Elana Mendelssohn), and a specialist is physiatry (Dr. Eddie Sassoon). (AR 260.) Each of the independent peer physicians - Dr. Superfine, Dr. Mendolssohn and Dr. Sassoon - separately concluded that objective findings did not demonstrate that plaintiff was disabled as of May 25, 2005, and that there was no documentation to support an inability to perform his sedentary job duties as a customer service representative. The Plan provides that STD benefits "shall be denied or cease if:"

- You do not provide proper medical information about your condition;
- You have not established your Disability based on *credible objective medical evidence*, as determined by the Claims Administrator.

(SPD at 10; AR0011 (emphasis added).) Dr. Paul's opinion does not include documentation of functional loss or complications from plaintiff's condition.

Because this Court finds issues of fact, and summary judgment is denied, it is unnecessary for the Court to decide any of the other issues raised by the parties. Under *Kearney*, denial of a motion is

potentially more than a formality. At a bench trial in an ERISA benefits case, a claimant may seek to introduce evidence that is not already in the record. *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir.1995) ("if circumstances clearly establish that [it] is necessary to conduct an adequate de novo review of the benefit decision."). Moreover, plaintiff will have the opportunity to evaluate the evidence in the Administrative Record.

## CONCLUSION

For the foregoing reasons, the cross-motions for summary judgment are DENIED.

IT IS SO ORDERED.

**Dated:   June 18, 2009**             **/s/ Lawrence J. O'Neill**
                                                                                    UNITED STATES DISTRICT JUDGE